Our final case. Case number 23-3098 and case number 23-3411, both from the District of Minnesota, United States v. Anton Lazzaro. Anton Lazzaro, District of Minnesota, United States v. Anton Lazzaro, District of Minnesota, United States v. Anton Lazzaro. Thank you, Your Honor, and may it please the Court, Daniel Gertz for Anton Lazzaro. Mr. Lazzaro, the background's important. It's not laid out in the briefs. Mr. Lazzaro was a strident Republican political activist who embarrassed a local congresswoman, Ilhan Omar, and had a target on his back for a lot of people. When they found out that during the pandemic he was dating females who were 16 and 17 years old, that apparently was the green light that the government needed to use this statute to prosecute him. But this case is unique. You will not find any case reported anywhere where the statute is stretched this thin. This is a sex trafficking case with no prostitution. The Supreme Court has told us over the last decade at least, they have been explaining to the Department of Justice that you cannot take these statutes and stretch them that thin. Just recently, the Snyder case, bribery, this last term, Ciminelli, Percoco before that, McDonald-Dubin, where the Department of Justice, with creative lawyers, takes a statute and stretches it so thin as to apply it to things that certainly Congress had not intended and to a reasonable person is not appropriate. Do you think that the ax here fell within the plain language of the statute? And if the answer is no, why? Because you're talking about intent, and I'm just reading the words. I don't think it falls within the plain language of the statute. But when you say intent, are you referring to – You're talking about legislative intent, and I'm just looking at the words of the statute. I don't think it falls within either, is the short question. But what they're trying to accomplish here goes far beyond what the legislative intent was. And that's the arguments, the expert at trial, the DOJ website, the sponsors of the bill, Senator Cornyn, all were talking about situations where minors were being controlled by third parties to engage in this work. The problem I'm having with your argument is take RICO. RICO had a very specific purpose, but now RICO is being used to find criminal liability all over the place in ways that Congress didn't intend. But you mentioned some cases where they scaled it back. They didn't scale – I mean, they have scaled back RICO, but not in the way you're suggesting. It's still being applied in ways that Congress never contemplated. So I'm just not sure that's a winning argument. Fair enough, and I'm in one of those RICO cases right now, and I think stretched really thin in that case as well. But here we have the district court suggesting that it can be implicit, that sex trafficking can be tacit somehow, that there doesn't have to be any real prostitution involved. It can just be sort of understood in people's head, the actor's head. I thought that that was in response to the idea that there wasn't a payment in advance of the sex or the sex act that the payment came after and that it was implicit that that's how it would work. Maybe I misunderstood how the district court looked at that or the theory of the case. Yeah, I don't think it has anything to do with the timing of gifts or anything like that, but there has to be an understanding. There has to be an understanding either before – well, let's say it this way, because there are two problems with that. One is that, first of all, to constitute prostitution, there has to be an agreement of something of value, money usually, in exchange for the sex. And that has to be – it can't be tacit. It has to be understood. There might be exceptions to that. I mean, here's a case where we have the man who was dating these young women two or three times each one. If this had developed, had progressed from this sort of dating situation into a situation that went on for six months and it transformed itself into a professional relationship, even if the words were never spoken, I think in that case, yes, at that point, you can have the judges' observation that it can be implicit would apply. But didn't the girls testify that their understanding at the time was that if they engaged in sex with Mr. Lazzaro that they would be paid? There were some of the girls who testified that they thought they were going to be paid, they hoped that they were going to be paid, that they wouldn't have done it if they didn't think they were going to get some money at the end of the day. But that doesn't transform it into prostitution. It is common for people to use sex as a way to get something they want. That if they get what they want, that doesn't turn them into prostitutes. Well, at some point, though, can't we assume, especially since there were repeat players here, that at some point after he paid, at the very least after he paid a few times, that there was a reasonable expectation that if I engaged again, I would get money? First, I take issue with the word paid. Nobody was paid. Okay, given money. There were gifts given to everybody, ones who had sex, ones who didn't have sex. Some of them thought, well, if I have sex, I might get more money. And that might be a reasonable thought. It might be not. But that doesn't turn it into prostitution. There has to be an agreement. Well, my understanding is what I'm asking about happens once. Some of the same people are involved. Here's your money. I think we can all agree there was money exchanged. Happens a second time. Here's your money. Isn't at some point there a reasonable expectation that if you engage in sex, that you're going to get paid for it? Well, that's what I was just explaining to Judge Kelly, is that at some point, if this wasn't two or three times, if it were three months and the same thing happens, and, in fact, now you no longer even have a social relationship. It's just, yeah, we're going to go down there. You have sex. You get some money. At that point, I agree it could turn into it. Why didn't that happen here? We had a woman who is serving as, like, the person who is transporting these folks. She obviously knew that some people are arranging Ubers, and she obviously knew that these women were getting paid. So at some point, why didn't it transform into that, even under your theory? There was no woman paying for Mr. Lozaro occasionally paid for Ubers. Arranging for the transportation, finding the girls, arranging. I forget her name. You're talking about Gisela Castro Medina. You got it. Yeah. This was the pandemic. You couldn't go to a party or a club or anywhere else to meet people. He asked Ms. Castro Medina to help, as she put it, to be a matchmaker, to help him meet some girls because it was impossible at the time. And she provided two contacts where it was just an introduction, hey, my friend wants to meet you, this and that. And that was all she did. There was nothing else that went with it. So whether she's – I don't think she's guilty either, but that's not for – that's not my argument. That's for another day. But, no, this never got to that point, Judge. There were a couple of days that didn't work out. And just to take the one example of – can I use the first names? Is that – I don't know what the rule is. I think with minors, we usually use the initials, but it kind of depends on what happened below. I don't know. Well, it was either EP or SD. In the district court, the first names were used. But in my brief, I used the initials. In any case, so this is one of the young females, 16, I think, whom was referred or met on Snapchat through Ms. Castro-Medina. They meet and go down shopping. He buys her this purse, an expensive purse. And he asks her to come home. She says no. That's all he could expect. He cannot have the mens rea required by the statute that – even recklessly believe that by buying someone a purse or seducing them with alcohol or impressing them with his credentials, that that would cause them to engage in prostitution at some point in the future. It's just not there. And that's why I think also – that's why in the argument I make on that point, there have been four circuits now, second, fourth, don't hold me to this, seventh and ninth, that have adopted that framework. And I don't – here it is. The defendant must know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution. And he has to have that knowledge. If it's just hit and miss, if the girl can say no, thank you, then it's not there. There is no established structure that somehow this person is going to be causing the future to want to have sex for money. So I disagree that in this case, at least, it had gone that far. I have some time left that I would like to save. If I may, I have a lot of other things to cover, but I'll save it. Thank you. All right. You may. Mr. Nelson, you may proceed. May it please the Court, and thank you. I don't think it's possible to really address the merits of the defendant's vagueness claim without first kind of isolating what is the most fundamental disagreement between the parties on appeal. And that is the defendant simply disagrees that he ever paid for sex with minors. Because, as you heard, according to the defendant, he never paid for sex. He merely seduced the minors and gave them gifts. And it's on this premise that his vagueness argument is built, because if the statute applies to innocent activity like seduction, like gift-giving, then it must be vague. But that is a false premise. The jury rejected the defendant's claim of seduction and gift-giving. And more importantly, the district court expressly found that he paid for sex, multiple times in the sentencing transcript. Sentencing transcript 8 and 9, when addressing his vagueness argument, the district court says, Mr. Lozaro used money and other things of value for two purposes. First, he used them to groom the girls, such as when he bought, and I'll use the first names here, Estella, that purse. And second, he used them to pay the girls for sex. The district court also noted that the jury decided, with respect to each victim, Mr. Lozaro paid her for having sex with him. The district court overruled Mr. Lozaro's objections to the PSR, denying that he paid for sex. And finally, the district court found Mr. Lozaro engaged in obstruction of justice and perjured himself when he testified that he didn't pay for sex. These are the factual findings of the district court who watched the entire testimony at this 9-day trial, heard all five victims testify, and was in the best position to see and assess the credibility. And the fundamental rule is factual findings like that from the district court simply cannot be overturned unless they're clearly erroneous. But that's for sentencing, right? We're talking about a jury, or are you saying that these were found in response to his motion? That's correct, Your Honor. That finding was made explicitly in responding to his motion to dismiss on vagueness grounds. So I think when assessing whether Section 1591 is vague as applied to the defendant, the analysis has to be grounded in what the jury and the district court found, that Mr. Lozaro was grooming minors to engage in commercial sex, and that ultimately he was paying them for sex. And as the district court concluded, the answer to that question is it's simply not vague when applied to that specific conduct. The defendant makes a couple arguments that I want to respond here to today. The first is he argues in his reply brief that Congress really only intended this because victims are being essentially controlled by either the defendant or a third party. And the court should reject that argument, and for the same reason essentially the district court did. Because one of the things the district court did so well is it kept its eyes on the statutory text. And nothing in that text requires that the victims be under the defendant or anyone else's control. And as this Court knows, canon of statutory interpretations, we don't read in elements that don't appear in the text of the statute. The statute also makes very clear with respect to adult victims, force, fraud, or coercion are required. But it conspicuously omits those elements with respect to minor victims. Again, Congress showed very clearly it knew how to impose a control, coercion-type element, but it did not do so with respect to minor victims. Rather, all the statute requires is that the minor victim, or that the defendant knows the minor victim, quote, will be caused to engage in commercial sex. And the ordinary meaning of cause is not the same as control, as the district court observed. So then we move to congressional intent, and Judge Strauss, you touched on this. Most of the defendant's argument springs from these non-textual sources. And at the outset, I think congressional intent, legislative history have little, if anything, to do with the question of whether a statute is vague. We – vagueness focuses on does the law give fair notice. And every citizen we presume to know the text of the law, to know the law, but we don't presume that every citizen is parsing and perusing non-textual sources, going through the congressional record to find individual statements of legislators. But even if we look to congressional intent, which I don't think we should do for a vagueness challenge here, it just simply doesn't support the defendant's argument. He – the main non-textual sources are the floor comments of a single legislator, as well as the comments of that same legislator in a letter he sent to a student for a school project. But as I think courts have observed, Supreme Court in particular, what Congress agrees on is the text of the statute. They don't agree necessarily on the preferences or the interpretation of individual legislators. And that's why the Supreme Court has said floor statements of legislators are the – rank among the, quote, least illuminating forms of legislative history. He also cites a single excerpt from the Justice Department's website. It summarizes the subject areas that are handled by the child exploitation and obscenity section. But it should be clear, if you go to that website, the purpose is just to educate the public on the work of a particular section. It's not an authoritative legal or policy analysis of Section 1591. So, again, I find that not very illuminating to the – what the meaning of the statute is here. So I think, again, the district court did an excellent job of keeping an eye on the text of the statute, and this Court should as well, because the plain text of that statute applies to the conduct of grooming minors. And I wonder, so when I was reading this case and thinking about it, one of the things I was thinking about is, while there may be some – something to some of the individual things that Mr. Lozaro is saying, when you read the statute as a whole – and I think we have to read the statute as a whole – it becomes very clear what is prohibited. I mean, you can take out odd words. So should we read the statute as a whole, or do we read it in its constituent parts? What do you think the precedent tells us to do? Absolutely. I believe the statute should be read as a whole. And my brief, I think, went – looked at both elements and did a textual analysis of why I don't think it's – why it's not vague. Each of the acts that are prohibited are clear. They have clear ordinary meanings. And then there's a scienter requirement tied to the defendant's knowledge that the minors will be caused to engage in commercial sex. There's a definition of commercial sex. As a whole, the statute gives fair notice that – that conduct like Mr. Lozaro's is prohibited. And it has been clear, at least since this Court's decision in Youngers, the statute does apply to mere purchasers. And I say mere, but, you know, to purchasers of commercial sex. There doesn't have to be – it's not limited solely to situations where there's a pimp or a supplier. This Court's already said it applies to purchasers of commercial sex. What do you – what do you make of the – I want to give you a chance, because this permeates the brief – the point that it could apply to somebody taking someone out to an expensive dinner, maybe, you know, buying a movie ticket, maybe buying a gift for their date, and then they engage in sex later on. That this – that this could entrap somebody, so to speak. I have a couple of responses. I'll start with the one I'm sure you know I'm going to say. This is an as-implied challenge, which means the focus is on what the District Court found the defendant's conduct was, not on hypothetical applications in other contexts. The defendant can assert constitutional rights of other people, can assert vagueness with respect to others. So that is irrelevant to the challenge. The second is I'd point to what the Supreme Court did in the United States v. Williams case, the 2008 case involving pandering of child pornography. And there the Court talked about how the Eleventh Circuit provided some examples of, well, what about – gave three different types of examples that – of what might constitute pandering. And the Supreme Court's response to that was, you know, look, the existence of difficult cases does not make a statute vague. Your question, your hypothetical, Judge Strauss, I think is solved by the fact that the government has to prove beyond a reasonable doubt that the defendant knew the minor victims would be caused to engage in commercial sex. And in some of the hypotheticals that have been posited in the defendant's brief, I think that's what's going to be the deciding factor in those cases. The government's not going to be able to prove under some of those hypotheticals that the defendant knew that he was going to be causing minor victims to engage in commercial sex. So that's a beyond a reasonable doubt issue, not a vagueness issue. The existence of close cases does not make a statute vague. What about the defendant's argument about implicit versus explicit to understanding? I will – I have a couple responses to that. First, again, is like the district court, I like to keep my eye on the statutory text. Nothing in the statutory language requires an express understanding between the parties that sex will be commercial. So what it does require is that the defendant know the minor victim will be caused to engage in commercial sex. And as the district court found and stated on the record, one way to cause might be, as the defendant suggests, making an explicit offer, an express offer for sex. I'll note first, the defendant did that with respect to at least one of the minor victims, minor victim Ellie. He made an express offer to pay her and her companions $400 each for sex. And he threatened to withhold that payment when one of the girls tried to opt out. So I disagree that there were never any express or explicit offers. But as the district court noted, another way to cause someone to engage in commercial sex is by, for example, getting them drunk, getting them alone, and making an implicit or tacit offer to engage in commercial sex. And the district court found, again, in addressing the vagueness argument, that that's precisely what the defendant did here. And that's supported by the evidence. And this is a really important point. One of the ways he would make implicit offers is he would make express offers of money for acts that led up to sex. He would make express offers. I'll give you money if you remove your clothes. I'll give you money if you two kiss. I'll give you money if you play fight with your sister. I'll give you money if you play sexual truth or dare with me, if you let me take a trophy photo. And so these acts, under the circumstances, communicate an implied or tacit offer to engage in commercial sex. Because if you're willing to explicitly pay for the acts that serve as a prelude to sex, that communicates an implied offer to pay for the final act. And again, finally, I'll note the standard of review. I mean, really we're asking, was it reasonable for the jury to make that conclusion? And was it clear error for the district court to make that conclusion? And I think under the circumstances here, it's simply not. I think it's also important to look at the overall context in discussing implicit versus express offers. The defendant used a teen recruiter to recruit some of these minor victims. Immediately upon reaching out to these minor victims, a commercial nature or transactional nature to the relationship was front and center. They talked about sugar daddy relationships. The girls were promised that you could have money, you could have alcohol, all these things that I'm having. The recruiter would glamorize sugar dating. The recruiter picked photos, and with the defendant's help, picked photos of the defendant with money, with celebrities. And so a transactional nature to this relationship was in play from the start. Second, he targeted vulnerable girls. The district court, again, made this finding. He wanted broken girls, sluts, whores. Those are his words in terms of the kind of people and girls he was targeting. And he didn't want girls that were too good because they'd report him. He was afraid they would report him to the police. The girls received money and valuables immediately upon their meetings with the defendant. The victims would be gotten alone. He got them alone in their condo, in the defendant's condo. That's the only place the defendant ever met with the victims, which condo is located in the 19th floor of a high rise in an urban area. They were isolated from other adults. Sometimes they didn't have their own transportation home. And they were further exampled. This was an opulent condo, as there was extensive evidence of at trial. It exposed more examples of his wealth, his influence. Immediately, he would provide or at least offer the victims access to forbidden items, Klonopin, alcohol, vapes. At least three of the victims got drunk while he remained in perfect control himself. And then he paid for those sexual acts as a prelude to sex, engaged in sex, and invariably paid the victims after sex. So under those circumstances, it was simply very reasonable for the district court to conclude and the jury to conclude that there was an implied agreement that this would be transactional commercial sex, and there was no error in that regard. For those reasons, this Court should affirm the judgment of the district court. Thank you. Thank you, Counsel. Counsel, you have four minutes. Thank you, Judge. What Counsel has tried to show is that there was implicit sex for cash. What he ignores and what was not proved, didn't come close to being proved, is that Mr. Lozaro, even if what Counsel says were true, if Mr. Lozaro would have known in advance that at some point in the future, this person would be caused to engage in commercial sex. They don't think paying somebody to take their clothes off, the jury can draw a reasonable inference that that might end up in sex and he knew it? I think that you could draw the reasonable inference that all of the methods of seduction he used might succeed in getting sex. That was the whole point, to be sex. He was not looking for commercial sex. He was merely looking for sex. Then why pay someone to take off their clothes or play fight or engage in other sort of sexual acts with each other? Well, I'm not going to argue about whether his methods of seduction were good or bad or improper, but that's what they were. And when you turn the conversation to a sexual nature after having emotional talk about this and that, that's what you're trying to do. You're trying to get in bed. Yes, I agree. But seduction is not trafficking. And even if it were straight-up prostitution, it is not trafficking unless he knows before it happens that sometime in the future this person is going to want to engage in commercial sex or be caused somehow to engage in a commercial sex transaction. He wasn't looking for commercial sex. It was a pandemic. He was simply looking for sex of any kind. And so the suggestion that, well, it was transactional, first of all, is equating ordinary seduction into something that it is not. Yes, he's looking for sex. That does not mean he's a trafficker because he has to know in advance that this person is going to engage in commercial sex. He did not know that sex would happen at all. And there's no evidence that he knew that it would happen at all. So to suggest that he had the mens rea is simply, simply unsupported. And that's the worst part of the lack of proof. Now, they made up for that with the prosecutorial misconduct, with the constantly, constantly suggesting that having sexual relations with persons who were at least 16 years of age, 17 years of age, was somehow unlawful and improper. It is not, not in the state of Minnesota. But we were not permitted to tell the jury that. And the prosecutors took advantage of that to paint him as, and called him, in closing, a predator, a predator suggesting that society needs to be protected from this person. That's exactly what it means. Now, if he were, if his desire was to have sex with persons who were five years old, that would be appropriate because they cannot agree to have sex. But with 16-year-olds, 17-year-olds, it's completely inappropriate. And that's how they made up for the lack of proof about trafficking, that he's simply a bad man and you need to protect society, you need to protect our young girls from Mr. Lazaro. Completely inappropriate. And that's what they used to fill the gap between the lack of the required mens rea and getting to a conviction. I thank you very much for your time. Thank you, counsel. We appreciate your arguments. The case is submitted and we'll have a decision as soon as possible.